HANSON BRIDGETT LLP
DIANE MARIE O'MALLEY, SBN 139166
domalley@hansonbridgett.com
WINSTON K. HU, SBN 306677
whu@hansonbridgett.com
MARIBEL LOPEZ, SBN 340907
mlopez@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

Attorneys for Defendant
COGIR MANAGEMENT USA INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XENIA CESILIA DE ALBA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COGIR MANAGEMENT USA INC.; WELLTOWER COGIR TENANT, LLC; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT COGIR MANAGEMENT USA INC.'S NOTICE OF REMOVAL AND REMOVAL PURSUANT TO 28 U.S.C. § 1446(a), DIVERSITY JURISDICTION (29 U.S.C. § 1332(a) (1) AND CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA") (29 U.S.C. § 1332(d))**<br><br>*(San Joaquin County Superior Court Case No. STK-CV-UOE-2022-5540)*<br><br>Action Filed:    June 30, 2022 |

**TABLE OF CONTENTS**

**Page**

I. PROCEDURAL BACKGROUND ..................................................................................4

II. VENUE IS PROPER .......................................................................................................5

III. STATEMENT OF JURISDICTION ................................................................................5

IV. REMOVAL IS TIMELY .................................................................................................6

V. PLAINTIFF ASSERTS A CLASS ACTION ..................................................................6

VI. JURISDICTION BASED UPON DIVERSITY OF CITIZENSHIP ...............................7

    A. Defendants' Citizenships Are Diverse To Plaintiff's Citizenship Under 28 U.S.C. 1332(a) ......................................................................................................7

        1. Plaintiff Is A Citizen Of California ..........................................................7

        2. Defendants Are Not Citizens Of California .............................................8

            a. Cogir Management Is Not A California Citizen ..............................8

            b. Welltower Is Not A California Citizen ............................................8

VII. JURISDICTION UNDER CAFA ....................................................................................9

    A. There Is Minimal Diversity Under CAFA ...........................................................9

    B. The Amount In Controversy Far Exceeds $5,000,000 ........................................10

        1. Alleged Overtime Violations .................................................................11

        2. Alleged Meal Period Violations .............................................................12

        3. Alleged Rest Period Violations ..............................................................13

        4. Failure to Provide Accurate Itemized Wage Statements ........................14

        5. Waiting Time Penalties ..........................................................................14

        6. Attorney's Fees ......................................................................................14

        7. Plaintiff's Other Claims Further Increase the Amount in Controversy ..............................................................................................14

    C. Summary of Amount in Controversy ..................................................................15

VIII. NOTICE TO STATE COURT AND TO PLAINTIFF .................................................16

IX. CONSENT TO REMOVAL BY REMAINING NAMED AND SERVED DEFENDANTS ..............................................................................................................16

X. CONCLUSION ..............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Behrazfar v. Unisys Corp.*,
    687 F.Supp.2d 999 (C.D. Cal. 2009) .................................................................................. 10

*Bodner v. Oreck Direct, LLC*,
    No. C 0604756, 2006 WL 2925691 (N.D. Cal. Oct. 12, 2006) ............................................. 6

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014) ............................................................................................................ 5, 6

*Davis v. HSBC Bank Nevada, N.A.*,
    557 F.3d 1026 (9th Cir. 2009) ............................................................................................... 9

*Ehrman v. Cox Communications, Inc.*,
    932 F.3d 1223 (9th Cir. 2019) ............................................................................................... 7

*In re Ford Motor Co./Citibank*,
    264 F.3d 952 (9th Cir. 2011) ............................................................................................... 14

*Fristoe v. Reynolds Metals Co.*,
    615 F.2d 1209 (9th Cir. 1980) ............................................................................................. 16

*Gant v. ALDI, Inc.*,
    2020 WL 1329909 (C.D. Cal. March 20, 2020) .................................................................. 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 14

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ................................................................................................................ 8

*Industrial Tectonics, Inc. v. Aero Alloy*,
    912 F.2d 1090 (9th Cir. 1990) ............................................................................................... 8

*Johnson v. Columbia Props. Anchorage, LP.*,
    437 F.3d 894 (9th Cir. 2006) ................................................................................................. 9

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
    199 F.Supp.2d 993 (C.D. Cal. 2002) ................................................................................... 10

*Lara v. Trimac Transp. Servs. Inc.*,
    No. CV 10- 4280-GHK ....................................................................................................... 10

*Lewis v. Exxon Mobil Corp.*,
 348 F.Supp.2d 932 (W.D. Tenn. 2004) ........................................................................... 15

*Lewis v. Verizon Communications, Inc.*,
 627 F.3d 395 (9th Cir. 2010) ........................................................................................... 10

*Lowdermilk v. U.S. Bank Nat'l Ass'n*,
 479 F.3d 994 (9th Cir. 2007) ........................................................................................... 14

*Lowery v. Ala. Power Co.*,
 483 F.3d 1184 (11th Cir. 2007) ......................................................................................... 9

*McCabe v. General Foods Corp.*,
 811 F.2d 1336 (9th Cir. 1987) ........................................................................................... 4

*Moss v. Infinity Ins. Co.*,
 2015 WL 7351395 (N.D. Cal. Nov. 20, 2015) .................................................................. 9

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*
 526 U.S. 344 (1999) .......................................................................................................... 6

*Pagel v. Dairy Farmers of Am., Inc.*,
 986 F.Supp.2d 1151 (C.D. Cal. 2013) ............................................................................. 14

*Patel v. Nike Retail Servs., Inc.*,
 58 F.Supp.3d 1032 (N.D. Cal. 2014) .............................................................................. 12

*Rippee v. Boston Market Corp.*,
 408 F.Supp.2d 982 (S.D. Cal. 2005) ............................................................................... 10

*Standard Fire Ins. Co. v. Knowles*,
 133 S.Ct. 1345 (2013) ..................................................................................................... 14

*Stanley v. Distribution Alternatives, Inc.*,
 2017 WL 6209822 (C.D. Cal. Dec. 7, 2017) .................................................................. 12

**Statutes**

28 U.S.C. § 84(a) ...................................................................................................................... 5

28 U.S.C. § 1332 ............................................................................................................... *passim*

28 U.S.C. § 1441 ............................................................................................................... 3, 4, 5

28 U.S.C. § 1446 ............................................................................................................... *passim*

28 U.S.C. § 1453(b) ............................................................................................................. 3, 5

Cal. Bus. & Prof. Code § 17200 ................................................................................................ 4

Cal. Bus. & Prof. Code § 17208 .............................................................................................. 11

Cal. Civ. Proc. Code § 338(a) ................................................................................................... 11

Cal. Civ. Proc. Code § 382 ..................................................................................................... 6, 7

Class Action Fairness Act of 2005 (CAFA)............................................................................*passim*

Lab. Code § 226(e)(1) ................................................................................................................ 14

Lab. Code § 226.7(c)......................................................................................................... 12, 13

**Other Authorities**

Rule 8(a)....................................................................................................................................... 5

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF XENIA CESILIA DE ALBA AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant COGIR MANAGEMENT USA INC. ("Cogir Management") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453. In support thereof, Defendants state as follows:

## I. PROCEDURAL BACKGROUND

On June 30, 2022, Plaintiff XENIA CESILIA DE ALBA ("Plaintiff") filed a putative Class Action Complaint ("Complaint") in the Superior Court of the State of California for the County of San Joaquin, entitled *Xenia Cesilia De Alba v. Cogir Management USA Inc., et al.*, Case No. STK-CV-UOE-2022-5540 (the "State Court Action").

Plaintiff's Complaint asserts the following nine causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Compensation; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Breaks; (5) Failure to Reimburse Necessary Business Expenses; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Timely Pay Wages During Employment; (8) Failure to Pay All Wages Due Upon Separation of Employment; and (9) Violation of Business and Professions Code Section 17200, *et seq*.

On August 8, 2022, Plaintiff personally served a copy of the Complaint and Summons to Defendant Cogir Management Agent for Service of Process, Diana Ruiz at CT Corporation System. A true and correct copy of the Complaint that was served on August 8, 2022, is attached as **Exhibit 1**, to this Notice of Removal.

As further required by 28 U.S.C. § 1446(a), Cogir Management hereby provides this Court with copies of all process, pleadings, and orders it received in this action. True and correct copies of these documents are attached as **Exhibit 2** to this Notice of Removal. Cogir Management has not been served with any pleadings, process, or orders besides those attached.

On August 9, 2022, Plaintiff personally served a copy of the Complaint and Summons to Defendant Welltower Cogir Tenant, LLC ("Welltower"). A true and correct copy of the Proof of Service of this Complaint is attached as **Exhibit 3**, to this Notice of Removal.

/ / /

1  Both Defendants have answered the Complaint, and a true and correct copy of Defendants'
2  Answer is attached as **Exhibit 4** to this Notice of Removal.
3  Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the
4  Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal.
5  28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II.   VENUE IS PROPER

Plaintiff filed the Complaint in the Superior Court for the State of California, County of San Joaquin, which is within this judicial district and division. *See* 28 U.S.C. § 84(a). This Court is thus the proper court for removal under 28 U.S.C. § 1441(a).

## III.   STATEMENT OF JURISDICTION

This Court has original jurisdiction over this action based on two grounds.

This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. section 1332(a) and is one that may be removed to this Court from the Superior Court of the State of California, County of San Joaquin, where the action was initiated. This action may be removed by Defendant pursuant to the provisions of 28 U.S.C. sections 1441(a), 1453(b) and 1446.

This Court also has original jurisdiction over this action under the Class Action Fairness Act of 2005 (CAFA) in that the Complaint purports to be a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and there is minimal diversity of citizenship between the parties. *See* 28 U.S.C. §1332(d)(2). Additionally, the number of putative class members exceeds 100. *See* 28 U.S.C. §1332(d)(5)(B). Defendant has not previously removed this case under CAFA. Accordingly and as further set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

The United States Supreme Court, in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014), clarified the standards applicable to notices of removal in CAFA cases, confirming a liberal standard in favor of a removing defendant. Specifically, the Supreme Court found that the similarity of language between the removal statute and Rule 8(a) can only mean that the same liberal pleading standards applied to complaints must also apply to notices of removal.

*Id*. at 81-82.

The Supreme Court also held in *Dart* that a removing defendant is not required to include evidence with its pleading in order to establish that the elements of federal subject matter jurisdiction are met. *Id*. at 86-87. Only if the Court or another party challenges jurisdiction should the Court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met. "In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold . . . Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. at 89. In addition, there exists no presumption against removal in CAFA cases, because Congress enacted CAFA specifically "to facilitate adjudication of certain class actions in federal court." *Id*.

## IV.   REMOVAL IS TIMELY

This Notice of Removal is timely. Under 28 U.S.C. § 1446(b), a notice of removal of a civil action must be filed within 30 days after service of the summons and complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*. 526 U.S. 344, 347–348 (1999) (holding that the 30-day removal period runs from the service of the summons and complaint; mere receipt of the papers unattended by any formal service is insufficient to trigger the removal period).

On August 8, 2022, Plaintiff's service on the Defendant Cogir Management became effective. Because Defendant filed this Notice of Removal within 30 days of service of the Summons and Complaint on September 7, 2022, this Notice of Removal is timely as a matter of law.

## V.   PLAINTIFF ASSERTS A CLASS ACTION

Plaintiff brings this lawsuit as a class action. The Complaint in the State Court Action itself is titled "CLASS ACTION COMPLAINT," Plaintiff states in the first paragraph that she brings this action "on Plaintiff's own behalf and on behalf of a putative class of California citizens who are and were employed by Defendants as non-exempt employees throughout California" and further states that "[t]he Class consists of Plaintiff and all other persons who have been employed

by any Defendants in California as an hourly-paid, non-exempt employee during the statute of limitations period applicable to the claims pleaded here." Ex. A, ¶ 6.

Accordingly, CAFA applies. *See Bodner v. Oreck Direct, LLC*, No. C 0604756, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under … California Code of Civil Procedure Section 382").

Plaintiff seeks to represent a class of "all California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between January 3, 2018 and the date of class certification." Ex. A, ¶ 20. Additionally, Plaintiff seeks to represent "all members of the Class who separated their employment with Defendant at any time between January 3, 2019 and the date of certification." Ex. A, ¶ 21.

Although Plaintiff's Complaint does not allege a specific number of persons who meet the proposed class definition, based upon inspection of Defendant's employment records, the number of individuals collectively employed by Defendant as non-exempt employees in California at which Plaintiff was employed during the time period from January 3, 2018 to the present is approximately 1,492 individuals. *See* Declaration of Benoit Levesque ("Levesque Decl."), ¶ 2. In addition, the Waiting Time Subclass is approximately 677 individuals. *Id.* Thus, as defined in the Complaint, the putative class exceeds 100.

### VI. JURISDICTION BASED UPON DIVERSITY OF CITIZENSHIP

**A.   Defendants' Citizenships Are Diverse To Plaintiff's Citizenship Under 28 U.S.C. 1332(a)[1]**

**1.   Plaintiff Is A Citizen Of California**

Plaintiff's Complaint states that she is "a resident of California and worked for Defendants" at their Manteca, California location. *See* Ex. A, ¶ 10. Therefore, Plaintiff is presumptively a citizen of the State of California. *See Ehrman v. Cox Communications, Inc.,* 932 F.3d 1223, 1228 (9th Cir. 2019) (finding that removing party's "jurisdictional allegations, which

---

[1] As discussed in detail below, the amount in controversy far exceeds $75,000. *See, infra*, Section VII.B.

provided a short and plain statement of the parties' citizenships based on information and belief, satisfied [its] burden of pleading minimal diversity.").

### 2. Defendants Are Not Citizens Of California

#### a. Cogir Management Is Not A California Citizen

Cogir Management is a Delaware Corporation organized as such under the laws of the State of Delaware. Levesque Dec., at ¶¶ 4-6, Ex. A, Ex. B; *see also* Defendant's Request for Judicial Notice ("RJN"). As listed on its corporate filings, Cogir Management's principal place of business is and has been at all times since this action commenced, located in Newark, Delaware. *See* Levesque Dec., at ¶ 4, Ex. A, Ex. B.

Under the Supreme Court's nerve center test, a corporation's "principal place of business" can also mean the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed"). In addition to Newark, Delaware, Cogir Management maintains corporate offices in Montreal, Quebec in Canada. Cogir Management's high-level corporate officers (including Cogir Management's Chief Executive Officer Mathieu Duguay) direct, control and coordinate Cogir Management's activities and otherwise perform many of Cogir Management's corporate level functions from these corporate Montreal offices. Levesque Dec., ¶ 7. Thus, even under the "nerve center" test, Delaware and/or Canada emerge as Cogir Management's principal place of business.

As such, Cogir Management is a citizen of Delaware and/or Canada. *See* 28 USC § 1332 (c)(1) (a corporation may be a dual citizen of the state where it has been incorporated and of the state where it has its principal place of business).

#### b. Welltower Is Not A California Citizen

Welltower is a limited liability company formed in Delaware with two members: (1) HCRI Tucson Properties, Inc. ("Tucson") and (2) Cogir Investments LLC ("Cogir Investments").

Levesque Dec., ¶¶ 8-11, Ex. C, Ex. D; RJN.  These LLC members are not citizens of California.  Levesque Dec., ¶ 11.  Tucson is a Delaware corporation and its principal place of business is and has been at all times since this action commenced, located in Wilmington, Delaware, while Cogir Investments is a limited liability company formed in Delaware.  *Id.*  Both Tucson and Cogir Investments maintain corporate offices and headquarters in Toledo, OH, where Tucson and Cogir Investments' high-level officers and/or members direct, control, and coordinate each entities respective activities.  *Id.*  None of Cogir Investments' members have offices in or operate from California.  *Id.*

As such, Welltower is a citizen of Delaware and/or Ohio.  *See Johnson v. Columbia Props. Anchorage, LP.*, 437 F.3d 894, 899 (9th Cir. 2006) (an unincorporated association, including an LLC, has the citizenships of all of its members).

## VII.   JURISDICTION UNDER CAFA

### A.   There Is Minimal Diversity Under CAFA

CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2)(A); 1453(b).  In other words, if any class member is diverse from any defendant, minimal diversity is met.  28 U.S.C. § 1332(d)(2); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 n.24 (11th Cir. 2007)).  As noted above, Plaintiff is a California citizen while *both* Defendants are not California citizens.[2]  Thus, minimal diversity is also met under CAFA.

///

---

[2] Notably, CAFA also abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.  *See Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes"); *Moss v. Infinity Ins. Co.*, 2015 WL 7351395, at *2 (N.D. Cal. Nov. 20, 2015).  Rather, for purposes of diversity jurisdiction under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).  Welltower is not a California citizen under CAFA for the additional reason that it is a Delaware limited liability corporation with its principal place of business in Ohio.  Levesque Dec., ¶¶ 8, 11, Ex. C, Ex. D.

**B.     The Amount In Controversy Far Exceeds $5,000,000[3]**

CAFA's $5,000,000 threshold for the "amount in controversy is not the same as the amount ultimately recovered." *Lara v. Trimac Transp. Servs. Inc.*, No. CV 10- 4280-GHK JCx, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010). Rather, in assessing the amount in controversy, courts must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005). After all, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Moreover, when a defendant's calculations are "relatively conservative, made in good faith, and based on evidence whenever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000." *Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009). As demonstrated below, Defendant's calculations are relatively conservative, made in good faith, based on evidence to the extent possible, and based on reasonable assumptions derived from the Complaint.

In calculating the amount in controversy, the claims of class members may be aggregated to determine whether the amount in controversy has been satisfied. 28 U.S.C. § 1332(d)(6).

Plaintiff's Complaint does not allege the total amount in controversy. However, as demonstrated herein, Plaintiff's allegations, when accepted as true, place more $5,000,000 in controversy in this lawsuit. By demonstrating that the amount in controversy exceeds the CAFA threshold, Defendants in no way concede the validity of Plaintiff's claims in any respect or the

---

[3] The alleged damage calculations set forth in the instant Notice of Removal are provided for purposes of removal only and based on the presumption of truth to which Plaintiff's allegations are entitled. Defendant denies that Plaintiff or any putative class member is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's claims and their alleged damages at every stage of this case.

1 likelihood that Plaintiff will obtain certification or recover anything.

2     In determining the amount in controversy to support its Notice of Removal, Defendant relies on a conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged: (1) minimum wage violations; (2) overtime violations; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to reimburse business expenses; (6) failure to provide accurate itemized wage statements; (7) failure to pay timely wages during employment; and (8) failure to pay all wages due upon separation of employment. The amount in controversy for these claims satisfy the jurisdictional minimum requirement of $5 million.

### 1. Alleged Overtime Violations

With regard to Plaintiff's claim for overtime wage violations, Plaintiff broadly alleges that she and the putative class members were entitled to receive overtime wages for compensation and Defendant failed to pay Plaintiff and the putative class members overtime wages for all hours worked. Ex. A, ¶¶ 52, 1-4. Plaintiff's Complaint is devoid of any factual allegations supporting this claim and lacks any specificity, as it fails to even allege how many hours she and the putative class members worked without being compensated overtime wages.

While Plaintiff does not allege how long she and others spent working off the clock, Defendant conservatively estimates that each potential class member worked an additional 30 minutes of unpaid overtime per putative class member per week.

In this matter, there is a four-year statute of limitations for this claim. Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208. Between January 3, 2018 and September 7, 2022, Defendant employed approximately 1,492 non-exempt employees in California. Levesque Dec., ¶ 2. Defendant pays its non-exempt employees biweekly. *Id*. ¶ 3. Accordingly there are 26 pay periods per year. The average hourly rate for class members during the class period was approximately $15.00, and is the hourly rate used for all calculations in this Notice of Removal. *Id*. During the proposed class period, the potential class members worked approximately 53,276 workweeks or 26,638 pay periods. *Id.* at ¶ 2.

Plaintiffs' allegations with respect to her overtime claims do not adequately state the

-11-

number of hours of overtime worked, the amount of overtime owed, or even whether the putative class members were denied the whole of the time-and-a-half (1.5x) their regular rate owed or, instead, whether they were paid straight time for hours worked beyond eight (8) or twelve (12) in a day or forty (40) in a week.  Accordingly, for purposes of these calculations, Defendant assumes Plaintiff and the putative class are only seeking the remaining half-time of their regular rate of pay.  Ex. A, ¶¶ 44-55.

A reasonable estimate of the amount in controversy for Plaintiff's unpaid overtime wages claim of one hour of unpaid overtime per pay period.  *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week.  This assumption is reasonable in light of the Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F.Supp.3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly").

Using only an even more conservative estimate of 30 minutes of unpaid overtime per putative class member per workweek, the approximate overtime liability is **$599,355** (53,276 [estimated number of workweeks for non-exempt employees collectively worked] x 1.5 [premium OT rate] x $15.00 [average hourly rate] x .5 [for 30 minutes]).

**2.    Alleged Meal Period Violations**

For every day an employee works six (6) or more hours and the employer fails to provide a 30-minute uninterrupted meal period prior to their fifth of work, or works ten (10) or more hours and the employer fails to provide a second 30-minute uninterrupted meal period, the employee is entitled to a premium payment equal to a full hour of pay at the employee's regular rate of pay.

Lab. Code § 226.7(c).

With respect to Plaintiff's meal period claim, Plaintiff alleges that she and the Putative Class Members did not receive compliant meal periods for working more than five (5) and/or ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period. Ex. A, ¶¶ 56-64s. And that Defendants failed to provide Plaintiff and the Class with both meal periods. *Id*. Plaintiff seeks to recover unpaid meal period premium payments. Ex. A, ¶ 52.

Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per work week for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$799,855.00** ($15.00/hour x [estimated number of workweeks for non-exempt employees collectively worked]).

Defendant's estimate is very conservative. Defendant assumes only one meal period violation for each workweek, per employee, even though Plaintiff alleges employees had a meal period violation "at all relevant times." *See* Ex. A, ¶ 63 .

### 3. Alleged Rest Period Violations

For every day an employee works three and a half (3.5) or more hours and the employer fails to provide at least a 10-minute uninterrupted rest period, or works six (6) or more hours and the employer fails to provide a second at least 10-minute uninterrupted rest period, the employee is entitled to a premium payment equal to a full hour of pay at the employee's regular rate of pay. Lab. Code § 226.7(c).

With respect to Plaintiff's rest period claim, Plaintiff alleges that she and the Putative Class Members did not receive compliant rest periods for working more than four (4) and/or six (6) hours per day. Ex. A, ¶ 65-71. Plaintiff seeks to recover unpaid rest period premium payments. Ex. A, ¶ 70-71.

Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per work week for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$799,855.00** ($15.00/hour x [estimated number of workweeks for non-exempt employees collectively worked]).

1  Defendant's estimate is very conservative. Defendant assumes only one rest period
2  violation for each workweek, per employee.

### 4. Failure to Provide Accurate Itemized Wage Statements

Based on the allegations of the Complaint and approximately, 26,638 pay periods, the amount of controversy for Plaintiff's Itemized Wage Statement claim is approximately **$2,595,200** (1,492 pay periods at $50 and 25,206 pay periods at $100). *See* Levesque Dec, ¶ 2. *See* Lab. Code § 226(e)(1) ("An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) . . .").

### 5. Waiting Time Penalties

There are approximately 677 Waiting Time Subclass Members. Levesque Dec., ¶ 2. Based on the allegations of the Complaint, the amount in controversy on this claim would equal no less than **$2,437, 200.00** (assuming a standard 8 hour shift [$15.00 x 30 days x 8 x 677]).

### 6. Attorney's Fees

Attorney's fees may also be included in the amount in controversy where the underlying statute authorizes an award of fees. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013). Here, Plaintiff is seeking attorney's fees with respect to all causes of action. (Ex. A, p. 20, at Prayer for Relief).

The Ninth Circuit has recognized 25% as an appropriate benchmark for attorney's fee awards in class action cases. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Under that benchmark, and based on the demonstrated amount in controversy for causes action one through eight, it is reasonable to place the attorneys' fees in controversy at 25% of the alleged damages, which would equal: **$1,807,866.25**.

### 7. Plaintiff's Other Claims Further Increase the Amount in Controversy

Plaintiff seeks injunctive relief to ensure compliance with the alleged California Labor

Code violations of which she complains. (Ex. A, p. 20, at Prayer for Relief). Defendant has not yet quantified the costs of compliance with any such injunction, this would also increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F.Supp.2d 1151, 1161 (C.D. Cal. 2013) [cost of complying with injunction may be aggregated for CAFA purposes].)

Plaintiff's Complaint also seeks "any additional relief that the Court deems just and proper." Ex. A, prayer for relief ¶ 14. Although uncertain in amount, this open-ended relief sought by Plaintiff only serves to increase the amount in controversy. *See, Lewis v. Exxon Mobil Corp.*, 348 F.Supp.2d 932, 932-43 (W.D. Tenn. 2004) [the "open-ended" relief sought by plaintiff, who prayed for "judgment to be determined by a jury, for all incidental, consequential, compensatory and punitive damages" established that her case met the amount in controversy requirement even though she pled in the complaint that she did not assert a claim in excess of $75,000].

Accordingly, it is reasonable to assume that the amount-in-controversy in this case would even further exceed $5 million.

**C.     Summary of Amount in Controversy**

In sum, the amount in controversy for diversity jurisdiction under 28 U.S.C. § 1332(a) ($75,000.00) and CAFA jurisdiction ($5,000,000.00) are also met. The allegations in Plaintiff's Complaint demonstrate that Plaintiff and the putative class place in controversy the following amounts:

| | |
|---|---|
| Minimum Wage Violations: | Not included |
| Overtime Violations: | $599,355.00 |
| Meal Period Violations: | $799,855.00 |
| Rest Period Violations: | $799,855.00 |
| Failure to Reimburse: | Not included |
| Waiting Time Penalties: | $2,437,200.00 |
| Itemized Statements: | $2,595,200.00 |

-15-

| | | |
|---|---|---|
| Injunctive Relief: | | Not included |
| Other Relief: | | Not included |
| Civil Penalties under the UCL: | | Not included |
| | SUB-TOTAL | $7,231,465 |
| Attorney's Fees at 25%: | | $1,807,866.25 |
| | **GRAND TOTAL** | **$9,039,331.25** |

### VIII. NOTICE TO STATE COURT AND TO PLAINTIFF

Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County of San Joaquin. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of San Joaquin as required under 28 U.S.C. § 1446(d).

### IX. CONSENT TO REMOVAL BY REMAINING NAMED AND SERVED DEFENDANTS

Named and served Co-Defendant Welltower[4] has agreed to removal of this action. Doe Defendants do not need to be joined in this Notice of Removal. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

### X. CONCLUSION

WHEREFORE, Defendant respectfully request that this action now proceed against it in this Court as an action properly removed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4] Although this request for Removal is filed on behalf of Cogir Management, undersigned counsel also represents Welltower in the State Court Action. *See* Exhibit 4, attached hereto.

| | |
|---|---|
| DATED: September 7, 2022 | HANSON BRIDGETT LLP |

By: _____*/s/ Winston K. Hu*_____
DIANE MARIE O'MALLEY
WINSTON K. HU
MARIBEL LOPEZ
Attorneys for Defendant
COGIR MANAGEMENT USA INC.